# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| ALEJANDRO GUTIERREZ,<br><br>    Plaintiff,<br><br>vs.<br><br>CADDELL CONSTRUCTION CO., INC.,<br><br>    Defendant. | CIVIL CASE NO. 12-00005<br><br>**ORDER**<br>re Motion to Dismiss |

This matter came before the court on July 25, 2013, for a hearing on a motion filed by Defendant Caddell Construction Co., Inc. ("Caddell") seeking dismissal of this action on two grounds: (1) the court lacked personal jurisdiction over Caddell, and (2) Guam was an improper forum for this lawsuit. Appearing at the hearing were Phillip Torres for the Plaintiff Alejandro Gutierrez and G. Patrick Civille on behalf of Caddell. Having heard from counsel and reviewed the pleadings associated with the motion and pertinent case law, the court issues the following Order granting the Motion to Dismiss in part.

I. **BACKGROUND FACTS**

    A. The Parties

Plaintiff Alejandro Gutierrez is an individual and a resident of the territory of Guam. Compl. at ¶1, ECF No. 1.

Defendant Caddell is a corporation organized under the laws of Alabama, with its principal place of business in Montgomery, Alabama. J. Caddell Decl. at ¶4, ECF No. 4-2. It was founded in 1983 and "performs a full range of construction and construction-related services for projects in

the United States" and internationally. *Id.* at ¶5. "Caddell primarily does work for federal clients, including the U.S. State Department, the GSA, the Federal Bureau of Prisons, the Department of Energy, and all branches of the U.S. Military." *Id.*

    B.  <u>The Underlying Dispute</u>

The Complaint, filed on May 1, 2012, asserts claims for Breach of Contract and Promissory Reliance/Equity which arose from an employment relationship between the Plaintiff and Caddell. The Complaint states that this court has jurisdiction over the dispute because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Compl. at ¶3, ECF No. 1.

According to the allegations in the Complaint, the Plaintiff had been employed with DCK Worldwide on Guam and was not seeking other employment, however an agent for Caddell offered the Plaintiff employment to assist with the construction of the U.S. Embassy in Africa and promised future projects if the Plaintiff successfully performed on the initial construction project. *Id.* at ¶¶5-6. In July 2011, the parties agreed to terms to be incorporated into an employment contract, and the Plaintiff quit his full time job at DCK Worldwide to join employment with Caddell. *Id.* at ¶¶7-8, 12. The parties formalized their agreement and executed the employment contract in Bujumbura, Burundi (Africa) on August 18, 2011. *Id.* at ¶14. According to the terms of the employment agreement, after a period of 90 days, the Plaintiff could only be terminated for cause. *Id.* at ¶11. By November 20, 2011, however, the Defendant was terminated, allegedly without cause. *Id.* at ¶17.

The specifics as to how Caddell hired the Plaintiff are in dispute. According to the Plaintiff, he "never submitted a resume to Caddell or otherwise sought employment with Caddell." P. Torres Dec., Ex. C thereto at ¶5, ECF No. 14-1. Instead, the Plaintiff asserts he was "contacted by Hank Williford, an agent of Caddell, regarding the job with Caddell." *Id.* The Plaintiff states that Mr. Williford "was particularly excited for [the Plaintiff] to join the Caddell team because Caddell had plans to bid on, and hopefully win, projects in Guam." *Id.* Mr. Williford allegedly stated that the Plaintiff's "experience and knowledge of Guam and local contractors would be an asset for any Guam projects." *Id.* The Plaintiff contends he "would not have quit his job and uprooted his family

for a short term position in Burundi." *Id.* at ¶8.

In contrast to the Plaintiff's version of his hiring, Caddell contends it was "Scott Oldson, a former Caddell employee, who suggested [the Plaintiff] send his resume to Caddell." J. Caddell Decl. at ¶12, ECF No. 4-2. "The first contact between Gutierrez and Caddell occurred when Caddell received a resume from" the Plaintiff. *Id.* at ¶13. The Plaintiff's "resume indicated he was employed at the time in Lagos, Nigeria." *Id.* at ¶14. "After receiving his resume, Caddell contacted [the Plaintiff] via email because there was no phone number or home address on the resume." *Id.* Believing that he was currently located in Africa, Caddell initially contacted the Plaintiff about a position in Malabo, Equatorial Guinea. *Id.*

On June 18, 2011, Mr. Williford – Caddell's Human Resources and Corporate EEO Officer (who has since passed away) – spoke with the Plaintiff and thereafter reported this conversation with the Plaintiff to Jeffrey Caddell.[1] *Id.* at ¶16. The Plaintiff told Mr. Williford that his contract had expired in May, but the company he was currently with agreed to keep him on until another position opened up. *Id.* Mr. Williford advised Mr. Caddell that the Plaintiff was "available for an interview the following week," but if a face-to-face interview in Alabama was required, it would take the Plaintiff two days to get to Alabama because he was currently on Guam. *Id.* at ¶17. Mr. Williford believed the Plaintiff would be a "good fit" for the Project Superintendent position in Malabo because the Plaintiff "already had a clearance, Embassy construction experience, sounded professional and communicated very well." *Id.* Mr. Williford asked Mr. Caddell to review the Plaintiff's resume and call him for a phone interview. *Id.*

On June 19, 2011, Mr. Caddell telephoned the Plaintiff, who said he had been based in Guam since 1995. The Plaintiff told him that he was working on a project in Guam but was interested in working elsewhere because he currently was not getting any COLA (cost of living adjustment) since his primary residence was in Guam.[2] *Id.* at ¶18. The Plaintiff told Mr. Caddell

---

[1] Jeffrey Caddell is the Vice President, International Operations for Caddell. *Id.* at ¶83. He is responsible for operations in all Caddell international projects. *Id.*

[2] The Plaintiff told Mr. Williford that he was currently making $75,000 per year in Guam but had previously been earning $150,000 annually plus a bonus in Nigeria.

that he wanted "to keep his home based in Guam, but would be interested in moving his home base if [Caddell] ever did work on Guam so that he could qualify for a COLA uplift in Guam." *Id.* at ¶19. The telephone interview concluded with Mr. Caddell advising the Plaintiff that his application would be discussed with Rod Ceasar – Caddell's Senior Vice President, International – who was stationed in Alabama, and Mr. Caddell would email the Plaintiff the following Monday to let him know if another interview was required. *Id.* at ¶20.

On June 21, 2011, both Mr. Caddell and Mr. Ceasar telephoned the Plaintiff for another interview. *Id.* at ¶21. The Plaintiff informed them that he was currently back in Guam working for DCK Worldwide in partnership with ECCI. *Id.* The Plaintiff said he previously worked with Montage in Nigeria on an addition and renovation of the Embassy building. *Id.* They discussed the Plaintiff's employment history and other matters relevant to the hiring decision. *Id.*

Mr. Ceasar and Mr. Caddell discussed the interview afterwards and decided to offer the Plaintiff the position without the benefit of a face-to-face interview because of the costs involved. *Id.* at ¶22. A draft employment contract was sent to the Plaintiff on June 21, 2011. *Id.* On June 22, 2011, the Plaintiff contacted Mr. Caddell and stated that he would like to take his wife with him to Malabo. Mr. Caddell explained that Malabo was a "single-status post, and did not have suitable facilities for spouses." *Id.* Mr. Caddell told the Plaintiff that he (Mr. Caddell) would be traveling to Malabo in the next couple weeks and while there he would see if arrangements could be made to accommodate the Plaintiff and his wife. *Id.* Mr. Caddell then advised Mr. Williford to "keep looking for another superintendent for Malabo, because [the Plaintiff] wanted accompanied status," and Mr. Caddell did not think the company could provide this in Malabo. *Id.*

Despite the uncertainty regarding the ability of his wife to accompany him, the Plaintiff signed the Malabo contract and returned it to Caddell on July 1, 2011. *Id.* at ¶23. On July 8, 2011, Mr. Caddell telephoned the Plaintiff and informed him of a way the Plaintiff's wife could accompany him. Caddell might be able to move a superintendent from its project in Bujumbura, Burundi to Malabo, and then Caddell could hire the Plaintiff to replace that superintendent in Bujumbura. *Id.* Unlike Malabo, Bujumbura was "an accompanied post," so the Plaintiff would be able to bring his wife with him. *Id.* Mr. Caddell stated that they had to wait to see if the

superintendent in Bujumbura would agree to go to Malabo, and if he did consent, Mr. Caddell would again contact the Plaintiff to confirm the change. *Id.*

On July 20, 2011, Mr. Caddell informed the Plaintiff that he would be able to go to Bujumbura and take his wife. *Id.* Caddell then emailed the Plaintiff a new contract for Bujumbura. *Id.* The Plaintiff thereafter traveled to Burundi and executed the Employment Agreement for work on the Burundi Embassy Project on August 18, 2011. *Id.* at ¶24. A copy of this Employment Agreement is attached as Exhibit A to the Complaint.

## II.　ANALYSIS

Caddell asserts two grounds for dismissing the Complaint. First, Caddell contends that the court lacks personal jurisdiction over it, both general and specific. Second, Caddell claims Guam is an improper forum for this lawsuit. Each of these arguments is analyzed below.

### A.　Personal Jurisdiction - Legal Standard

Caddell moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The burden is on the Plaintiff to show that personal jurisdiction exists. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In evaluating a motion to dismiss for lack of personal jurisdiction, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted).

Where, as here, the court decides the motion to dismiss based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Unocal*, 248 F.3d 922 (quotation omitted). The court need "only inquire into whether [the plaintiff's] pleadings and affidavits make a *prima facie* showing of personal jurisdiction." *Cvaruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). The court must accept uncontroverted allegations contained within the plaintiff's complaint as true and must resolve conflicts between statements contained within the parties' affidavits in the plaintiff's favor. *Id.*; *Boschetto*, 539 F.3d at 1015. However, the court "may not assume the truth of allegations in a pleading which are contradicted

by affidavit." *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (quotation omitted).

When, as here, no federal statute governs personal jurisdiction, the court may exercise personal jurisdiction over a defendant if (1) the applicable state long-arm statute permits it, and (2) exercising that jurisdiction does not violate federal due process standards. *Boschetto*, 539 F.3d at 1015. Guam's long-arm statute allows for the exercise of jurisdiction "on any basis not inconsistent with the Organic Act or the Constitution of the United States." 7 Guam Code Ann. § 14109 (2005). "Due to this broad-reaching statutory language, the effect is that the jurisdictional analysis merges into a single step. That is, a court analyzing personal jurisdiction under Guam's long-arm statute simultaneously analyzes the issue of constitutional due process." *Barnes v. Superior Court*, 2012 Guam 11 at ¶27. Thus, the court may exercise personal jurisdiction over a defendant if doing so comports with federal constitutional due process.

The due process issue here is whether Caddell's contacts with Guam are of such quality and nature that they could reasonably expect "being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Due process is satisfied "when *in personam* jurisdiction is asserted over a non-resident corporate defendant that has certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quotation omitted).

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant – general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. The Plaintiff contends that this court has both general and specific jurisdiction over Caddell.

1. General Jurisdiction - Minimum Contacts

"In the context of general jurisdiction, minimum contacts exist where a defendant has 'substantial' or 'continuous and systematic' contacts with the forum state, even if the case is unrelated to those contacts." *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1171 (9th Cir 2006) (quoting *Helicopteros*, 466 U.S. at 415). "The standard for general jurisdiction is high; contacts with a state must 'approximate physical presence.'" *Id.* at 1169 (quoting *Bancroft &*

*Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1086, 1086 (9th Cir. 2000)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home*.") (emphasis added).

When using the minimum contacts test, factors the court considers include: "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there," as well as the more generalized considerations of "[longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Tuazon*, 433 F.3d at 1172 (quotation omitted). Ultimately, the outcome should turn on the "economic reality of the defendant's activities rather than a mechanical checklist." *Id.* at 1173 (quotation omitted).

Caddell argues there is no general jurisdiction over it. Caddell asserts it never engaged in any active business in Guam. J. Caddell Decl. at ¶6, ECF No. 4-2. Caddell never had an office in Guam, never maintained any employees in Guam, and has not worked on any construction projects in Guam. *Id.* Caddell states that it does not own property in Guam and has never advertised in Guam, nor does it have an agent for service of process in Guam. *Id.*

Caddell asserts that its prior activities in Guam were limited. In pursuit of U.S. Department of Defense construction contracts, Caddell entered into a joint venture arrangement with four other companies, called the "CAMS, a Joint Venture" (hereinafter referred to as the "JV"). *See* J. Caddell Decl. at ¶7, ECF No. 4-2, and J. Caddell 2nd Decl. at ¶3, ECF No. 17-1. The JV was registered in and created under the laws of Hawaii. J. Caddell 2nd Decl. at ¶3, ECF No. 17-1. The JV was formed specifically for submitting a bid on the Multiple Award Construction Contract ("MACC"), put out for bid by the federal government covering projects in Guam and the Pacific. *Id.* at ¶4.

According to Mr. Caddell, in 2010, the JV, along with six other participating companies, was awarded the Multiple Award Task Order contract, which is also commonly referred to as the MACC. *Id.* at ¶5. "The award and participation in the MACC did not authorize Caddell or the JV to [] work in Guam or elsewhere, but merely qualified the JV to bid future projects that might be

issued under the MACC."[3] *Id.* Mr. Caddell states that the "JV has not been awarded any contracts, or 'Task Orders,' under the MACC contract for a project in Guam." *Id.*

In connection with the JV's bids,

> Caddell sent a representative to Guam for the purpose of visiting the project site or attending a pre-bid related meeting. In conjunction with bid preparation, Caddell representatives made a total of nine trips to Guam over about a three year period from 2007 to 2010. Each trip was short in duration, averaging less than four days. All but two of these bids were physically submitted in Hawaii or Texas. The two bids submitted in Guam were not submitted by Caddell employees, but by one of Caddell's joint venture partners.

J. Caddell Decl. at ¶7, ECF No. 4-2.

The Plaintiff contends that "Caddell's actions in Guam are far from 'isolated,' and are both continuous and substantial." Opp'n at 9, ECF No. 14. The Plaintiff asserts that Caddell has been involved with Guam since it filed with the Department of Revenue and Taxation a Joint Venture Agreement on November 12, 2010. The Plaintiff states that Caddell has sought to be a contractor on many federal government contracts on Guam and has sent numerous company officials to Guam on business trips. Furthermore, the Plaintiff contends that Caddell also designated itself as an agent for service of process in its partnership. Finally, the Plaintiff contends that Caddell has directly advertised to and sought to develop relationships with local Guam suppliers to assist Caddell with making and preparing bids for government work.

Contrary to the Plaintiff's assertion that Caddell filed the JV agreement with the Department of Revenue and Taxation ("DRT") in 2010, Caddell contends that the filing was of the fictitious name and was for preparation purposes only, in anticipation that the JV would be submitting bids, and possibly be awarded work, under the MACC, and did not amount to a business or contractor's license. J. Caddell 2nd Decl. at ¶6, ECF No. 17-1. This DRT submission specifically states that the JV is formed under the laws of Hawaii, with its principal office located in Hawaii, and that the agreement was governed by the laws of California. *See* P. Civille Decl., Ex. E thereto at ¶¶16.1-

---

[3] The MACC is essentially a short list of seven contractors (the JV and six other companies) eligible to bid on certain projects in the region, but does not award any actual work to the JV because funds for the federal projects are only obligated with the issuance of each individual task order. J. Caddell 2nd Decl., ECF No. 17-1, at ¶8.

16.2, ECF No. 17-2.

With regard to the Plaintiff's claim that Caddell has designated an agent for service of process, Caddell notes that the DRT filing indicates that the registered agent for the JV (not Caddell) is Attorney Cesar Cabot, who was the attorney for its JV partner (Samsung). J. Caddell 2nd Decl. at ¶7, ECF No. 17-1.

Caddell's activities do not constitute "conducting business" in Guam since Caddell does not have an office in Guam, does not have any employees or agents for service of process in Guam, does not own property in Guam, does not advertise in Guam, and has never worked on any construction projects in Guam. Even viewing any conflicts in the evidence in the Plaintiff's favor, Caddell's contacts with Guam involve sporadic visits to Guam in a three-year span in connection with bids Caddell sought under the MACC as a partner in the JV. Caddell's connections to Guam fall well short of the "continuous and systematic" contacts that the Supreme Court and the Ninth Circuit have held constitute sufficient "presence" to warrant general jurisdiction. *See Helicopteros*, 466 U.S. at 416 (no jurisdiction over foreign corporation that sent officer to forum for one negotiating session, accepted checks drawn of an forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); *Cubbage v. Merchent*, 744 F.2d 665, 667-68 (9th Cir. 1984) (no jurisdiction over doctors despite significant numbers of patients in forum, use of forum's state medical insurance system and telephone directory listing that reached forum); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31 (9th cir. 1984) (no jurisdiction over defendants despite several visits and purchases in forum, solicitation of contract in forum which included choice of law provision favoring forum, and extensive communication with forum). Finally, although the Plaintiff asserts that Caddell's worldwide advertising of job openings on the internet is sufficient to hail Caddell into this forum, the court is not convinced. Internet advertisement alone is not sufficient to subject the advertiser to jurisdiction in a plaintiff's home state; there has to be "'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Cybersell, Inc. V. Cybersell, Inc.*, 130 F.3d 414, 418 (9th cir. 1997). As the Ninth Circuit has noted, "[i]f the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual

demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075-76 (9th Cir. 2011) (quotation omitted).

Given that "[t]he standard for general jurisdiction is high," requiring contacts which "approximate physical presence" and "continuous corporate operations with [the] state," *Tuazon*, 433 F.3d at 1169, the court finds that the Plaintiff has not met his burden of making a *prima facie* showing that Caddell's direct contacts with Guam are sufficient for the court to exercise general jurisdiction over Caddell.

### 2. Specific Jurisdiction

Alternatively, the Plaintiff argues that Caddell has sufficient "minimum contacts" with Guam arising from, or related to, its recruitment of the Plaintiff in Guam, which the Plaintiff asserts was done because Caddell anticipated obtaining contracts in Guam in the future.

Courts apply a three-part test for analyzing a claim of specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quotation omitted).

The Plaintiff bears the burden on the first two prongs. *Id.* "[I]f the Plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation omitted).

#### a. Purposeful Availment or Purposeful Direction

The requirement that the defendant do some act purposefully to avail himself of the laws of the forum state ensures that a person is not hailed into court as the result of random, fortuitous, or attenuated contacts or on account of the unilateral activity of third parties. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The court must first examine whether Caddell's activities

were directed purposefully toward Guam.

To satisfy the first prong of the test for specific jurisdiction, a defendant must have either purposefully availed itself of the privilege of conducting business activities within the forum or purposefully directed activities toward the forum. *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988). Purposeful availment typically consists of action taking place in the forum that invokes the benefits and protections of the laws of the forum, such as executing or performing a contract within the forum. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). To show purposeful availment, a plaintiff must demonstrate that the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state."*Gray & Co. v. Firstenber Mach. Co.,* 913 F.2d 758, 760 (9th Cir. 1990).

Purposeful direction exists when a defendant has committed an act outside of the forum state that was intended to and does in fact cause injury within the forum. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). A purposeful direction analysis is most often used in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 1093.

Here, the dispute arises from the Plaintiff's claim of breach of an employment contract and equitable relief relating to an alleged breach of an oral agreement pertaining to the Plaintiff's future employment possibilities. The mere fact of entering into a contract with a Guam resident is not enough to show that Caddell "purposefully availed" itself of the privilege of conducting business in Guam. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) ("the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident."). There are several reasons why the employment contract between the Plaintiff and Caddell is insufficient to meet the "purposefully availing" part of the minimum contacts test. First, the contract was executed in Burundi and not Guam. Second, the contract was to be performed entirely outside of this forum (Guam) and in Burundi. Finally, the alleged breach – the Plaintiff's termination from employment – occurred in Burundi. There is really very little connection between Guam and the contract at issue. Although telephone calls and emails were sent between Alabama and Guam as part of the pre-contract negotiations between Caddell and the Plaintiff, "ordinarily, 'use of the mails, telephone, or other international communication simply do

not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Roth*, 942 F.2d at 622.

Simply put, the facts and circumstances clearly show that Caddell did not purposefully avail itself of the privilege of doing business in Guam. The Plaintiff has failed to satisfy this first prong of the specific jurisdiction test.

### b. Claim Arises Out of Forum-Related Activities

The second prong of the test for specific jurisdiction requires that the claim be one that arises out of, or relates to, the defendant's activities in the forum.

Here, the Plaintiff's claims for wrongful termination and equitable relief relating to an alleged promise of future employment do not arise out of Caddell's activities on Guam. Instead, these claims arise out of the termination of his employment which occurred in Burundi, not on Guam. Additionally, the termination does not arise out of, or result from, Caddell's pre-employment discussions and negotiations at the outset of their relationship. Even if it did, as stated previously, Caddell's limited pre-contract communications with the Plaintiff are insufficient to establish personal jurisdiction.

The Plaintiff attempts to argue that Caddell's activities relating to its pre-qualification under MACC and the projects it hoped to achieve are related to the Plaintiff's hiring because the Plaintiff contends that Caddell eventually wished to employ him for Guam projects. *See* Opp'n at 14 ECF No. 14. Unfortunately, this allegation of future employment *on Guam* is neither supported by the pleadings or the declarations on file. According to the Complaint, Caddell promised the Plaintiff "that successful performance on the initial construction project would lead to future projects." Compl., ECF No. 1, at ¶6. The Complaint also asserts that Caddell promised the Plaintiff "would be employed by Caddell for future projects for so long as Gutierrez performed satisfactorily and Caddell won new contracts." *Id.* at ¶25. The Complaint contains no claim that the Plaintiff was promised future employment with Caddell's projects *on Guam*.

The Plaintiff's own declaration also fails to support his contention that the promise of future employment was somehow related to Caddell's activities on Guam with regard to the MACC. The declaration merely states that "Hank Williford told [the Plaintiff] that he was particularly excited

for [the Plaintiff] to join the Caddell team because Caddell had plans to bid on, and hopefully win projects in Guam. He said that [the Plaintiff's] experience and knowledge of Guam and local contractors would be an asset for any Guam projects." P. Torres Decl., Ex. C thereto at ¶5, ECF No. 14-1. These assertions do not amount to a promise of future employment with Caddell in Guam. Additionally, the declaration states that the Plaintiff "was lead to believe that Caddell would be seeking work in Guam since it was a DBMACC approved contractor." *Id.* at ¶8. Again, this statement fails to show how the Plaintiff's promissory reliance claim has anything to do with Guam.

In fact, after the Plaintiff had initially signed the Malabo contract, Caddell advised the Plaintiff via email on July 1, 2011, that "we want to make it clear that the Malabo project is the only project under consideration. [Caddell is] not promising another project in the future when the Malabo project is completed." J. Caddell Decl. at ¶25 and Ex. C thereto, ECF No. 4-2. Mr. Caddell admits that he had "some verbal conversations with [the Plaintiff] in which [Mr. Caddell] stated that if [the Plaintiff] did well in Malabo, it was likely that Caddell would want to use him again in the future, provided Caddell was awarded additional projects." *Id.*

The Plaintiff's claims – both the breach of contract and promissory reliance claim – arise out of the termination occurring in Burundi, and do not arise out of Caddell's Guam-related activities. The Plaintiff has failed to meet his burden of satisfying the second prong of the specific jurisdiction test.

      c. <u>Reasonableness of Exercise of Jurisdiction</u>

Finally, the third prong of the test for specific jurisdiction provides that the exercise of jurisdiction must comport with fair play and substantial justice. *Panavision*, 141 F.3d 1320. To determine whether the exercise of jurisdiction over a non-resident defendant would be reasonable, courts consider the following seven factors:

> (1) the extent of the defendant['s] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant['s] state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. V. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir 1993). There is a presumption

that the exercise of jurisdiction is reasonable when the first two prongs of the specific jurisdiction test have been met. *Schwarzenegger*, 374 F.3d at 802. As discussed above, the court has determined that the first two prongs of the specific jurisdiction test have not been met.

In evaluating the above factors, the court finds that exercising jurisdiction over Caddell would not be reasonable. As discussed previously, Caddell has not purposefully interjected itself into Guam's affairs. It would pose a substantial burden for Caddell to defend itself in Guam. J. Caddell Decl. at ¶31, ECF No. 4-2. Caddell is an Alabama corporation with its principal place of business in Alabama. All of the records relating to this dispute are located in Alabama. *Id.* Caddell's witnesses are located in Alabama, Burundi, and Afghanistan. *Id.* It would be more convenient and less expensive to arrange travel for these witnesses to the United States rather than to Guam because of the availability of more flight options and fewer connections are required. *Id.* While Guam may have an interest in adjudicating a dispute involving one of its residents, Alabama would have a similar interest as well, particularly here where a majority of the materially significant acts giving rise to the claims occurred outside of Guam.

Overall, the Plaintiff has failed to meet his burden of making a *prima facie* showing of sufficient minimum contacts with Guam to establish either general or specific personal jurisdiction over Caddell.

3. <u>Dismissal or Transfer</u>

Having determined that it lacks personal jurisdiction over Caddell, the court must next decide whether to dismiss the case or transfer it to Alabama. This issue is directly related to the second part of Caddell's motion which seeks dismissal of this action based on improper venue.

"Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631; *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which it filed a case laying venue in the wrong . . . district shall dismiss, or it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). "Transfer is appropriate . . . if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have

exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) (citation omitted). This rule is mandatory; if the conditions are met, "[t]he statute requires transfer." *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986). "When determining whether transfer is in the interest of justice, courts have considered whether the failure to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors." *Cruz-Aguilera*, 245 F.3d at 1074. "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Id.* (quoting *Goldlawr Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

As discussed above, the court lacks personal jurisdiction over Caddell. The Middle District of Alabama,[4] where Caddell has its principal place of business and where Caddell is incorporated, could have exercised jurisdiction at the time this action was filed. *See* 28 U.S.C. § 1391(a) ("A civil action wherein jurisdiction is founded . . . on diversity of citizenship may . . . be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .; or (3) if there is no district in which an action may otherwise be brought . . ., any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."). There is no evidence to suggest that the Plaintiff filed this case in bad faith. Finally, it would be "time-consuming and justice defeating" to require the Plaintiff to re-file this case and pay another filing fee in the Middle District of Alabama.

///
///
///
///
///

---

[4] Alabama is divided into three judicial districts: Northern, Southern and Middle. Montgomery, Caddell's principal place of business, is included in the Middle District, Northern Division. *See* http://www.almd.uscourts.gov/courtdir/divisions.htm.

### III. CONCLUSION

Based on the above analysis, the court finds that it lacks personal jurisdiction over Caddell. Although the court agrees with the first part of Caddell's two-part motion, instead of dismissing the action, the court orders that this case be transferred to the Middle District of Alabama.

IT IS SO ORDERED.



/s/ Frances M. Tydingco-Gatewood
    Chief Judge
Dated: Aug 22, 2013